IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIEL T. DERICHS,            )
                              )
           Plaintiff,         )
                              )
v.                            )    Case No. 16-2346-JWL
                              )
AT&T SERVICES, INC.,          )
                              )
           Defendant.         )
                              )
_____)

## MEMORANDUM AND ORDER

In this case, plaintiff seeks review of the denial of his claim for disability benefits under an employee benefits plan administered by defendant.  Plaintiff asserts his claim in this case pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*  In accordance with the parties' agreement that this case may be decided on the basis of the administrative record considered by the plan's claims administrator, the parties have filed cross-motions: a motion for summary judgment by plaintiff (Doc. # 18) and a motion for judgment on the administrative record by defendant (Doc. # 16).  As more fully set forth below, the Court concludes that plaintiff's claim for benefits must be **remanded** for a new determination by the claims administrator, pursuant to the Court's interpretation of the governing provision of the benefits plan.  Thus, the Court **grants in part** plaintiff's motion to that extent, and it **denies** defendant's motion.

## I. Background

Plaintiff was a participant in an employee benefit plan administered by defendant. Claims under the plan were administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"), to whom the plan granted discretion to interpret the plan and to determine entitlement to benefits thereunder. Plaintiff ceased working in January 2015, and shortly thereafter he applied for short-term disability benefits under the plan. The claims administration process ran its course, and in December 2015 plaintiff's claim was finally denied. Plaintiff subsequently filed the instant suit under ERISA.

On March 29, 2018, the Court issued an order in which it noted that the parties, in their briefs relating to the pending motions, disputed the proper interpretation of the plan's definition of "totally disabled," although they had not cited any relevant authority on that issue. In light of the limited analysis provided by the parties and because the interpretation of that provision could be dispositive, the Court ordered the parties to submit supplemental briefs on the issue. The Court has now considered the parties' additional arguments.[1]

## II. Analysis

In denying plaintiff's claim, Sedgwick and defendant determined that plaintiff was not totally disabled under the plan. The plan defined totally disabled in relevant part as follows: "You are considered Totally Disabled when, because of illness or injury, you are unable to perform all of the essential functions of your job . . . ." This definition---"unable

---

[1] The case was reassigned to the undersigned judge after the supplemental briefs were ordered.

to perform all of the essential functions"---could be interpreted in two different ways. First, this language could mean that, to show that she is totally disabled, a claimant must show that she cannot perform *any* of her job's essential functions, as she would not be disabled if she could perform some (but not "all") of the essential functions. That is the interpretation espoused by defendant in this case. Second, this language could mean that a claimant is disabled if she cannot perform any particular essential function of her job, as she would then be unable to perform "all" of the essential functions. In this second interpretation, the "un-" of "unable" serves as a negation of the ability to perform all essential functions---if there is one that cannot be performed, then the claimant cannot perform all of those functions. Plaintiff argues in favor of this second interpretation. The Court concludes that this language, on its face, could reasonably be interpreted in either fashion, and it was this ambiguity that caused the Court to order the additional briefing.

Because this plan gives the administrator discretion to interpret its terms and determine eligibility for benefits, the Court would ordinarily apply a deferential standard of review and uphold a reasonable interpretation made by the administrator. *See Conkright v. Frommert*, 559 U.S. 506, 512 (2010). In its original briefs on the pending motions, defendant argued that the administrator applied the first alternative interpretation set forth above. In its supplemental briefing, however, defendant has conceded that it is "unclear from the record" which interpretation Sedgwick applied in denying plaintiff's claim. The Court agrees with defendant that although the various claim denials quote the plan's definition of "totally disabled," they do not indicate which interpretation was being applied

3

in deciding plaintiff's claim.[2]  Defendant argues that its presently-espoused interpretation is reasonable, and that the use of it would not be arbitrary and capricious.  Defendant does not argue, however, that the administrator applied a particular interpretation at the time of the denial to which this Court could afford deference.  Nor does defendant argue that the administrator should have another opportunity to interpret the plan definition.  Accordingly, because there is no interpretation to which it may defer, the Court proceeds to interpret that plan definition, for purposes of this plaintiff's claim, as a matter of law.

In its supplemental briefs, defendant mainly argues that plaintiff was not disabled under either alternative interpretation.  In its only argument addressing the proper interpretation of the definition, defendant merely cites two circuit court cases that support its interpretation; notes that a district court disagreed with those two decisions; and urges this Court to follow the two circuit courts.  Defendant has not analyzed the reasoning of those courts; nor has defendant offered any reasons why its interpretation should be favored.  In his supplemental brief, plaintiff has not analyzed defendant's cases or cited any additional authority.  Plaintiff does argue that its interpretation is more reasonable because if an employee is unable to perform any particular function that is essential to her

---

[2] For instance, the final denial letter noted that independent physician advisors concluded that the medical information did not support that plaintiff was "unable to perform [his] regular job duties," and the letter further stated that the medical findings were not so severe as to prevent plaintiff from "performing the duties of this job."  Thus, the letter does not make clear whether plaintiff was required to show that each and every one of his essential duties was beyond his ability or whether he merely had to identify a single essential function that he could not perform.  In essence, the denial letter suffers from the same ambiguity that plagues the plan definition.

job, then she cannot perform the entire job and may be subject to dismissal---in which case, the employee should be considered disabled.

The Court agrees the plaintiff's interpretation makes the most sense, for the reasons argued by him. The definition of total disability does not refer to all of the employee's job functions, but instead turns on the performance of the *essential* functions of that job. Thus, there is no danger that a person will be denied benefits simply because she can perform one trivial job function (such as punching her time card). Similarly, at the other extreme, there is no danger that a person will be considered totally disabled even though she can perform all essential functions but cannot perform some other trivial function. By referencing the *essential* functions of the job, the standard seeks to determine whether the employee can, for practical purposes, continue to do her job. If any one essential function cannot be performed, the employee's ability to perform the job as a whole is defeated. Thus, plaintiff's interpretation, making an employee disabled if some but not all essential functions can be performed, is more reasonable and is more in keeping with the plan's clear purpose of providing benefits to those who can no longer perform their jobs.

The Court's interpretation is furthered supported by application of *contra proferentem*, the rule of construction under which ambiguities are construed against the drafter of the language at issue and thus in favor of the insured. *See Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253 (10th Cir. 2007) (rule applies in reviewing an ERISA plan *de novo*).

Finally, contrary to defendant's statement in its initial supplemental brief, the weight of authority supports the Court's interpretation. Defendant relies on the unpublished case

of *Crossman v. Media General, Inc.*, 9 F. App'x 147 (4th Cir. 2001) (unpub. op.), in which "disability" was defined to mean "the inability . . . to perform all of the customary duties of [the] position." *See id.* at 150. The court held that the plan administrator had not abused its discretion in denying a claim because the employee could perform some of his duties, thereby giving the plan language "its plain meaning." *See id.* at 151. This case is distinguishable because the plan definition turned on the performance of "customary" duties, and thus did not focus on the performance of the essential or core functions of the job. In addition, the Court does not agree with the *Crossman* court that such language is "plain" and not subject to differing interpretations.

Defendant also relies on *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262 (5th Cir. 2004), in which the policy provided for benefits for one "unable to perform all of the material and substantial duties of his occupation." *See id.* at 270. The court held that the plan fiduciary applied the "legally correct interpretation" requiring the employee to show that she could not perform any of the material and substantial duties. *See id.* Again, however, this Court does not agree with the *Ellis* court that such an interpretation follows from "the plain wording" of the plan, *see id.* at 271, given the ambiguous phrasing. Moreover, key to the *Ellis* court's ruling was the fact that a contrary interpretation would conflate the disability provision with the plan's "partial disability" provision, which applied if the employee was able to perform "one or more, but not all, of the material and substantial duties" of his occupation. *See id.* at 271-72. The Court concedes that, if the plan in the present case included a partial disability provision that applied if the employee could perform some but not all of her essential job functions, that fact would support

6

interpreting the total disability definition to require an inability to perform *any* essential function, in order to avoid making the partial disability provision superfluous. Defendant's plan, however, does not contain any such partial disability provision,[3] and *Ellis* therefore is not particularly persuasive.

To its credit, defendant in its supplemental brief also notes the contrary result reached by the court in *Elwood v. AT&T Umbrella Benefit Plan No. 1—AT&T Disability Income Program*, 2010 WL 3259710 (M.D. Fla. Aug. 16, 2010), *aff'd*, 427 F. App'x 709 (11th Cir. 2011), which involved the same definition of "total disability" that is at issue in the present case. After finding this language to be ambiguous, the court concluded as follows:

> Logic favors [the plaintiff's] interpretation. If a particular function is "essential" to a job, and an employee cannot perform it, it would seem to follow that the employee cannot do that job. The fact that the employee could perform other job requirements would not make up for it.

*See id.* at *3 (footnote omitted). Thus, the court concluded that the plaintiff's interpretation was "the better one." *See id.* The *Elwood* court also distinguished *Crossman* and *Ellis* on the same bases that this Court has cited. *See id.* at *3 n.2.

Although the parties have not cited any other cases in their supplemental briefs, other decisions support the Court's interpretation. In *McClure v. Life Insurance Company of North America*, 84 F.3d 1129 (9th Cir. 1996), the Ninth Circuit concluded that a policy

---

[3] The plan provides that one is partially disabled if "unable to perform all of the essential functions of your job . . . for the same number of hours." Thus, unlike the plan in *Ellis*, the total and partial disability definitions may not be differentiated by the number of essential functions that can still be performed.

defining disability as the inability to perform "every duty" was subject to two interpretations ("every" could mean the entirety of the duties or the separate parts of the entirety) and thus was ambiguous. *See id.* at 1134. The court held that the provision should be construed in a practical sense to refer to *essential* duties, and that the "common-sense" interpretation was that a disability existed if the employee could not perform any one of the essential duties. *See id.* In *Seitz v. Metropolitan Life Insurance Co.*, 433 F.3d 647 (8th Cir. 2006), the plan provided for disability benefits to one "unable to perform all material aspects of his occupation." *See id.* at 650. The Eighth Circuit held that "when a Plan uses an individual's own occupation to determine whether he or she is totally disabled, being able to perform *some* job duties is insufficient to deny benefits." *See id.* at 651 (emphasis in original) (citations omitted). In *Kalish v. Liberty Mutual / Liberty Life Assurance Company of Boston*, 419 F.3d 501 (6th Cir. 2005), the Sixth Circuit held that the fact that the employee could perform some duties did not provide a basis to deny a claim under language that provided for benefits if "unable to perform all of the material and substantial duties of [the] occupation." *See id.* at 506-07; *see also Finkelstein v. Guardian Life Ins. Co. of Am.*, 2008 WL 8634992, at *10 (N.D. Cal. Nov. 23, 2008) (noting that the weight of authority supports the plaintiff's interpretation of being unable to perform "all of the material duties" of an occupation).

In *McFarland v. General American Life Insurance Company*, 149 F.3d 583 (7th Cir. 1998), the Seventh Circuit appeared to take a more nuanced approach. The policy provided that a person was totally disabled if "unable to perform the material and substantial duties" of his occupation. *See id.* at 586. In resolving the parties' dispute about the meaning of

that language, the court focused on whether the employee was unable to perform his job, including because he was unable to perform each and every one of the job's essential functions. *See id.* at 588. In the present case, a similar focus on the employee's ultimate ability to perform the job favors the Court's interpretation, as the inability to perform any particular essential function naturally compromises the ability to perform the entirety of the job.

The Court finds these cases favoring plaintiff's position to be persuasive. Accordingly, for purposes of plaintiff's claim, the Court interprets the plan's definition of "totally disabled" to mean that plaintiff was disabled if he could not perform any one of the essential functions of his job.

As noted above, defendant argues that it should win even under the interpretation adopted by the Court. Specifically, defendant argues that there is no objective medical evidence that plaintiff could not perform any particular essential function of his job. The Court is unwilling to conclude as a matter of fact, however, that the administrator would necessarily reach the same conclusion under the proper standard. For instance, the administrator never set forth a list of the essential functions of plaintiff's job. Nor did the administrator directly address opinions from plaintiff's treating physicians that he could not perform his job.[4] As defendant points out, administrators, in exercising their discretion,

---

[4] For example, Dr. Davis opined that plaintiff "would be unable to report to work on a consistent basis, work a full day, stay on task when at work or successfully interact with others in the work place;" and that "the severity of his PTSD precludes a successful return to work activity at this time." Dr. Everson opined that plaintiff could perform "no work of any kind" based on plaintiff's particular job.

9

are not required to accord special weight to the opinions of claimants' physicians or to explain when they credit reliable evidence that conflicts with those opinions, although they may not arbitrarily refuse to credit reliable evidence. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Nevertheless, there was evidence in the record to support plaintiff's claim that he was limited in his ability to perform his particular job. In light of such evidence, the Court cannot conclude that the administrator, if it had applied the correct standard, would necessarily have concluded that plaintiff had not shown that there was a single essential function of his job that he could not perform.[5] Moreover, the Court may consider only the rationale asserted by the plan administrator in denying a claim. *See Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009). Thus, the Court cannot speculate to attribute a possible rationale to the administrator that it did not express. The administrator might have made the same determination---and this Court offers no opinion at this time concerning the reasonableness of any such determination---but the record does not establish that fact. Thus, the Court cannot assume that the administrator's decision would have been the same under either alternative interpretation.

Accordingly, it is appropriate that plaintiff's claim be remanded to the plan administrator for a new determination. *See Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288-89 (10th Cir. 2002) (remand to ERISA administrator for additional findings is appropriate remedy); *Finkelstein*, 2008 WL 8634992, at *12 (remanding to allow

---

[5] Needless to say, any future review by this Court of the administrator's determination upon remand would be aided if the administrator directly addressed this evidence from plaintiff's treating physicians.

10

administrator to apply court's interpretation of total disability definition).  On remand, the administrator shall apply the interpretation of the plan's total disability definition that the Court has adopted herein, under which plaintiff is disabled if he was unable to perform any particular essential function of his job, and the administrator shall make a new determination on plaintiff's claim for benefits within a reasonable time.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for judgment on the administrative record (Doc. # 16) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 18) is **granted in part** as set forth in this order, and plaintiff's claim for benefits in this case is hereby **remanded** for a new determination by the claims administrator in accordance with the Court's interpretation of the benefits plan.

IT IS SO ORDERED.

Dated this 9th day of May, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[6] To be clear, the Court has not intended in this opinion to suggest how it would rule on a challenge by plaintiff to a subsequent denial of benefits by the administrator.